IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SHERRY MORRIS,                  )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-16-546-JHP-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Sherry Morris ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's applications for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1]   Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. Claimant completed her high school education and one year of college. Claimant has worked in the past as an office manager. Claimant alleges an inability to work beginning April 18, 2010 due to limitations caused by neuropathy, lupus, and fibromyalgia.

### Procedural History

On September 6, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was

denied initially and upon reconsideration.  On February 19, 2015, a hearing was held before Administrative Law Judge ("ALJ") Doug Gabbard, II in McAlester, Oklahoma.  By decision dated April 7, 2015, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits.  On October 17, 2016, the Appeals Council denied review of the ALJ's decision.  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation.  He determined that while Claimant suffered from medically determinable impairments, none significantly limited her ability to perform basic work-related activities for twelve consecutive months and, therefore, were not severe.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) concluding that none of Claimant's medically determinable impairments were severe; (2) failing to properly weigh the opinions of Claimant's treating physician; and (3) failing to properly evaluate Claimant's credibility.  The Court will address these issues somewhat out of the order from which they are presented in the briefing.

### Consideration of the Treating Physician's Opinion

4

In his decision, the ALJ determined Claimant suffered from the medically determinable impairments of fibromyalgia, anxiety, affective disorders, migraines, GERD, chronic interstitial cystitis, tibialis tendinitis, enthesopathy of ankle and tarsus, plantar fascial fibromatosis, myalgia, anorexia, genital herpes, back pain, hip pain, leg pain, ankle and foot pain, chronic pelvic pain, painful urination, diarrhea, fatigue, and weight loss. (Tr. 15). He concluded that none of these impairments or combination of impairments had significantly limited or was expected to significantly limit Claimant's ability to perform basic work-related activities for 12 consecutive months. Therefore, the ALJ determined Claimant did not suffer from any severe impairments. Id. As a result, the ALJ concluded Claimant was not under a disability from April 18, 2010 through the date of the decision. (Tr. 20).

Claimant contends the ALJ failed to properly weigh the opinion and medical evidence from her treating physician, Dr. Kim L. Kurvink. Dr. Kurvink has longitudinally treated Claimant since 2009 with Claimant seeing him every other month, primarily to renew her prescription for pain medication. (Tr. 36, 40). Claimant suggests that Dr. Kurvink made a medical finding that she was restricted to lifting only five pounds at a time. In fact, the reference to a lifting restriction is contained in a section of Dr.

Kurvink's notes entitled "Subjective" and "History of Present Illness" ("HPI") wherein she describes Claimant's relating of her pain in her upper back and neck at a 9 out of 10 severity, that medications help control the pain so she could stay active, and that she could lift up to five pounds at a time.  (Tr. 351). Nothing in the notes indicates that the restriction represented an opinion by Dr. Kurvink based upon medical evidence.

Other references in the record made by Claimant in the briefing have a similar source.  Claimant references findings of pain with ambulation, limited walking due to pain, tender feet, an inability to mow the lawn due to pain, painful walking and standing, limited to ten minutes of housework, multiple references to back, leg, and foot pain, and increased stress due to dogs barking.  All of these references, however, are a reflection of Claimant's statements to Dr. Kurvink and not medical opinions of limitation upon Claimant's ability to work.  (Tr. 240, 333, 352, 370, 391, 402).  To the extent Claimant attempts to transform her own subjective complaints into Dr. Kurvink's objective medical opinions, her argument of error fails.

As for the argument that the ALJ failed to weigh Dr. Kurvink's medical opinions, no opinions appear in the record which required weighing.  The ALJ accurately set forth the treating physician's findings and treatment records in the decision.  (Tr. 18-19).  Dr.

Kurvink's treatment notes consistently indicate Claimant reported pain in her neck, back, and knees. They also reflect that she reported medications help control the pain so she can stay active. Upon examination, Dr. Kurvink repeatedly found (neck) mild tenderness of the lower cervical paraspinous and trapezius muscles with no cervical spinous tenderness; (back) mild tenderness of the lower thoracic paraspinous muscles and right lumbar paraspinous muscles; (feet) mild tenderness of plantar aspects at the heels and over the MP joints; and (psych) normal mood and affect, with some improvement in these conditions during this time. (Tr. 227, 228, 229, 230, 231, 240, 243, 245, 246). When the treatment records offer no opinion concerning a claimant's abilities or limitations but merely reflect her complaints and treatment, no pertinent medical opinion exists for the ALJ to weigh. Moua v. Colvin, 541 Fed.Appx. 794, 797-98 (10th Cir. 2013). The ALJ committed no error in his analysis of Dr. Kurvink's findings.

## Assessment of Claimant's Credibility

Claimant also contends the ALJ failed to properly assess her credibility. Claimant testified at the administrative hearing that she previously worked as a trainer for an H & R Block owner. (Tr. 32). She quit the job due to stress, pain, and exhaustion. She stated that she could not hold a full time job and that she would not get out of bed the next day after attending the hearing and

7

going to the doctor.  (Tr. 33).

Claimant testified that she suffered from lupus and fibromyalgia which manifests with "an ache that's an all over body ache that never stops.  It's like the flu that never goes away." Claimant stated that she has neuropathy in her feet.  She asserted that it hurts when she walks or stands on her feet.  She took medication in order to walk on her feet.  (Tr. 34).  Claimant stated that she could stand for ten minutes before requiring her to sit.  She had no problems with sitting.  (Tr. 35).

Claimant stated that Dr. Kurvink told her that the problems with her feet was attributable to fibromyalgia.  He prescribed Oxycontin and Oxycodone for this condition.  She agreed with the ALJ that she takes an "incredible amount of pain medication" and agreed that it was too much.  She has taken the medication since 2007.  (Tr. 36).  She had been trying to get the dosage lower and to try other medications that did not make her sick.  (Tr. 37).

Claimant did not do any housekeeping and cooking consisted of making something in the microwave or making a sandwich.  She stated that in any job she would have to take a lot of breaks and would miss a lot of work.  (Tr. 38).

She also testified that she suffered from migraine headaches. She estimated that she had 15 headaches per month on average. Claimant also stated that she had a lot of kidney stones.  She also

went to a psychiatrist for treatment of depression.   (Tr. 41). Claimant took medication for depression, anxiety, and medications to control her fibromyalgia and lupus.   (Tr. 42).   The latter medications had the side effects of vomiting and swelling of the throat where she could not breathe.   <u>Id</u>.

Claimant was also prescribed inserts and a boot for her foot problems.   Any weight on the foot causes pain so she sleeps with her feet hanging off of the bed.   (Tr. 43).

Claimant does not do the dishes but she might put some dishes in the dishwasher.   She also stated that she had trouble with concentration.   She forgets to turn the water off, walks in rooms and forgets why she is there, and forgets if she has taken her medicine.   (Tr. 43-44).   Claimant takes medicine for diarrhea and she wears Depends in case of a need for a change which usually occurs five times a day when she is nervous.   Claimant stated that she had a colonoscopy but it did not show anything.   (Tr. 44).

Claimant testified that she had blisters in her mouth caused by lupus and she takes medication to gain weight.   Claimant stated that she experienced pelvic pain where "[y]ou feel like you're falling out through your vagina."   (Tr. 45).

Claimant takes a bath twice a week because she doesn't care about bathing more often and because it hurts.   (Tr. 45-46).   She stated that she bought sugar in four pound sacks because she could

9

not lift more.  She can walk for about 30-45 minutes.  When she has
a chance to sit, she stops and sits for 10 to 15 minutes then gets
up and goes again.  (Tr. 46).


     As stated, Dr. Kurvink did not characterize Claimant's
tenderness of her musculoskeletal areas as anything more serious
than "mild" during her examinations.  Although she did assess
Claimant with fibromyalgia, anxiety, and periodic GERD, Dr. Kurvink
also noted that the conditions at all times were "stable."  (Tr.
227, 228, 229, 230, 231, 240, 243, 245, 246, 249-50, 382-83, 391-
92, 394, 403).

     In addition to Dr. Kurvink's treatment records, Claimant was
evaluated by Dr. Terry L. Kilgore on November 26, 2013.  Claimant
reported that her feet hurt due to plantar fasciitis.  She also
experienced pain in her upper thoracic spine as well as her
shoulder, hands, hips, and knees.  Claimant stated that she was
told in 2007 that she may have lupus but had never been treated for
the condition.  Her main treatment, as noted by Dr. Kilgore, was
Oxycodone and other pain medications for which she sees her doctor
every other month for prescription refills.  Claimant also told Dr.
Kilgore that she had depression, panic attacks, and anxiety.  She
stated that she was not able to be around crowds or shop around a
large group of people.

She told Dr. Kilgore that she was tired all of the time. Her husband cleans the house and cooks food. She stated that she was able to lift about five to ten pounds. She did not require an assistive device to ambulate and was able to drive a car. Claimant was not under the care of a psychiatrist but received Lorazepam for panic attacks and anxiety. She applied for disability due to fatigue, lack of endurance, and anxiety. (Tr. 255).

Dr. Kilgore found Claimant did not appear to be in severe distress and was alert and oriented as to time, place, and situation. Her gait was stable with a mild limp with the right leg and a walking boot. Claimant was able to dress and undress herself without any help or assistance. (Tr. 256).

Claimant was prescribed a boot and some inserts upon a diagnosis of Posterior Tibial Tendon Dysfunction on July 30, 2012. The subsequent medical records during the relevant period do not indicate that she was required to continue to wear these orthotics. (Tr. 244).

While these medical professionals found Claimant suffered from determinable medical conditions, the objective treatment records do not support the level of limitation urged by Claimant. Indeed, Dr. Kurvink had every opportunity in her findings to indicate specific physical limitations due to Claimant's conditions but only made reference to her subjective statements without making supportive

objective findings.

The ALJ also noted inconsistencies in Claimant's statements and actions, including stating she could perform no housework at the hearing while the records indicated she had done so a month earlier. (Tr. 38, 405). Additionally, Claimant collected unemployment which required a statement that she was ready, willing, and able to work while now claiming an inability to work due to disability. (Tr. 19-20). *See* Vigil v. Colvin, 623 Fed.Appx. 936, 939 (10th Cir. 2015)("The fact that Ms. Vigil actively sought employment while maintaining she suffered from disabling pain is a legitimate ground for the ALJ to discount her credibility.").

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

### Step Two Evaluation

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or

14

laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Other than Claimant's discounted testimony, little support exists in the record to support a finding of a severe impairment resulting from Claimant's medically determinable conditions.  While she certainly suffers from conditions which are pain producing, she has not sustained her burden to demonstrate that they would have anything more than a mild effect upon her ability to engage in basic work activity.  As such, the ALJ did not err in his step two analysis.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with

the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 23rd day of February, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE